UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD J. PAYNE,

    Petitioner,                                       2:07-cv-1710 (MDS)

    vs.                                                <u>MEMORANDUM & ORDER</u>

J.C. WALKER, et al.

    Respondent

_____/

       Petitioner *pro se* Gerald Payne seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in California Superior Court, Sacramento County (the Superior Court). Payne was convicted, following a jury trial, on November 17, 2004, of two counts of second degree robbery in violation of Cal. Penal Code §§ 211, 212.5(c). Based on the jury finding Payne had five prior felony convictions, the Superior Court sentenced Payne to a term of 60 years to life imprisonment. Having exhausted his state court appeals and state collateral remedies, Payne filed this Petition claiming numerous alleged constitutional errors arose prior to, and during, his trial. For the following reasons, Payne's Petition is denied.

## BACKGROUND

**I.    Arrest and State Court Proceedings**

       The events which led to Payne being arrested and charged with robbery are not disputed. During the afternoon of December 31, 2003, Payne, Kurt Andrillion, and Richard Chaney drove to North Highlands, California and parked their car near SAFE Credit Union. (Docket No. 39:

1

Lodged Doc. No. 2, at 17.) Using sunglasses and a hat purchased at a nearby Dollar Tree store to disguise his face, Payne entered the credit union, approached several tellers, and demanded $50 and $100 bills. (Docket No. 39: Lodged Doc. No. 4, at 3.) Payne received about $3000 in cash, as well as a bank tracking device, which he unknowingly placed in a yellow bag he was carrying. (*Id.* at 3–4.)

Several witnesses watched Payne exit the credit union and enter a small white car with two other men. (*Id.* at 3.) Payne, Andrillion, and Chaney drove to Andrillion's home, leaving the white car in the driveway. (*Id.* at 4.) Using the bank's tracking device's signal and information from witnesses, several Sacramento sheriff's deputies located the white car and surrounded Andrillion's house. (*Id.*) All three men were taken into custody. (*Id.*)

On January 5, 2004, Payne was arraigned for robbing the credit union. (Resp. Br. at 14.) On January 13, 2004, Payne appeared with appointed counsel from the public defender's office for an initial hearing before the Superior Court. (Lodged Doc. No. 10: Transcript of Hearing dated January 13, 2004, at 2.) At that hearing, Payne, who was cautioned repeatedly by the Superior Court not to interrupt the proceedings, indicated that he wished to make a motion pursuant to *People v. Marsden*, 465 P.2d 44 (Cal. 1970), to substitute his attorney as ineffective (a *Marsden* motion). (Lodged Doc. No. 10: Transcript of Hearing dated January 13, 2004, at 3–5.) After the Superior Court ordered Payne removed from the courtroom, the court denied the motion, stating "[t]here is no rational basis for a *Marsden* Motion at this time him having no knowledge whatsoever of the individual who is assigned to represent him." (*Id.* at 4.)

At a hearing on January 30, 2004, the Superior Court's minute entry reflects that Payne's bail was re-evaluated (being then set a $1 million) and that a hearing was set for February 2, 2004, "re: Pro Per status req." (Docket No. 39: Lodged Document No. 16: Clerk's Transcript on Appeal filed June 3, 2011 ("CT"), at 2–3.). On February 2, 2004, Payne's public defender was relieved by Superior Court Judge Thomas M. Cecil,[1] and Payne signed a form titled "Record of

---

[1] According to the State's Answer to Payne's Petition before this Court, the circumstances of Payne's counsel being replaced are as follows:

Faretta Warnings," which Judge Cecil endorsed under the statement: "The Court determined that the defendant has knowingly, intelligently and voluntarily decided to represent him/herself with full knowledge of the risks and dangers of doing so." (CT at 56.) The Superior Court's minute entry for the hearing also reflects this information:

> FP: re pro per status
> Faretta warnings given +
> signed; PD rel'd,
> ∆ pro per status – GTD

(CT at 4.)

At hearing on April 27, 2004, Payne, acting *pro per*, appeared for status conference and raised several discovery issues with Judge Cecil. (Petition, Ex. A: Transcript of Hearing dated April 27, 2004 ("April 27 Hearing"), at 2–3.) Payne listed a number of concerns about his investigator and his access to evidence. (*Id.* at 3–6.) Toward the end of the hearing, the following colloquy between Payne and the Superior Court ensued:

> **Payne:** One more, just the last issue right here, Your Honor. If possible, because of the impediments that I have been faced with, I would like if the Court would appoint me advisory counsel which would somewhat facilitate some of the issues that have been blackballed, such as receiving transcripts, basic transcripts of some of the proceedings that I have been going forth with in Court here. Advisory counsel would—it would alleviate a lot of different problems that's conflicting with Teresa Huff's office and the investigator. Not so much for advice or anything, I'm not trying to get any advantage. I would just like to be able to have a more better way of being able to convey what's needed and what you have, things of that nature with advisory counsel.

---

> The Public Defender's office was appointed to represent [Payne] on [January 5, 2004]. On February 2, 2004, the trial court granted [Payne's] request to represent himself, finding that he knowingly, intelligently and voluntarily decided to represent himself with full knowledge of the risks and dangers of doing so. Petitioner signed a form acknowledging that he had been advised of the risks of self-representation, as required by *Faretta v. California*, 422 U.S. 806. the Public Defender was relieved from the case.

(State's Answer to Petition for Writ of Habeas Corpus filed July 2, 2008, at 14.)

>         And just for the record, as you know there has been misconduct. As I said, I wrote you a letter to that regards and actually sent you documentation. You can verify that, there's no question about the misconduct. And that order up there as long as there's no interruption or tampering with the records at the Sheriff's Office, we will verify that, and I will be ready to proceed to trial, your Honor, and face my jury.
>
> **The Court**: Pursuant to [§] 1368 the Court on its own motion expresses a doubt as to the competency of Mr. Payne. Dr. Nakagawa and Dr. Foster are appointed to examine the defendant pursuant to 1368 et. sec. [sic] of the Penal Code. In the event either of them is unavailable, Dr. Matussi [] is appointed as the alternate.
>
>         Criminal proceedings are suspended. The matter is continued to May 25th, 8:30 in this department.

(April 27 Hearing, at 6–7.) Thereafter, Payne exited the courtroom. (*Id.* at 7.) In his absence, the Court the entered the following *ex parte* statement:

> **The Court**: I need to make a record. The record should reflect that Mr. Payne sent me a long rambling letter accusing a variety of people of misconduct or working in cahoots with one another, cheating him out of his rights. I felt it was inappropriate to respond to this letter. I didn't respond to it. It's in the Court file.
>
>         The record should also reflect both the prosecution and Court have been put on notice by the panel that they have serious doubts about the competency about Mr. Payne based upon his allegations, repeated allegations concerning his investigations and his treatment. And based upon his performance today and his letter and the information from the panel, I concur. Mr. Payne is no longer, it appears, suitable to represent himself. We'll deal with his competency first.

(*Id.* at 7–8.)

On May 25, 2004, the Superior Court held a status conference at which Payne's competency was addressed. ((Petition, Ex. A: Transcript of Hearing dated May 25, 2004 ("May 25 Hearing"), at 2.) The Superior Court noted for the record that it had received two psychological evaluations of Payne. (*Id.* at 3.) The court asked the prosecution if it was prepared to submit the competency issues, and the State submitted. (*Id.*) The Court then stated: "As is the defendant, I presume. The defendant is found to be competent. Criminal proceedings are reinstated." (*Id.* at 3–4.) Payne then inquired as to why the proceedings had been suspended for

4

the prior month. (*Id.* at 4–5.)  The Superior Court told Payne that it had suspended proceedings based on his prior behavior in court. (*Id.* at 5.)  Payne objected that while he had been unable to pursue his defense for a month, the State had been able to continue with its trial preparations. (*Id.* at 5.)

On November 9, 2004, the Sacramento County District Attorney filed an amended information against Payne charging him with two counts of second-degree robbery of the credit union.  The amended information also alleged that Payne had six prior felony convictions. (Docket 39: Lodged Document No. 16: Clerk's Transcript on Appeal filed July 3, 2008 ("CT"), at 731-32.)  Andrillion was charged with receiving stolen property. (*Id.*)

During a two-week joint jury trial against Payne and Andrillion, the State presented evidence in the form of testimony by Chaney that Payne had directed Andrillion to drive to the credit union. (Lodged Doc. No. 4, at 2–3.)  Chaney denied knowing that Payne was planning to rob the credit union. (*Id.* at 2 n.3.)  Chaney testified that when Payne returned to the white car, he declared, "[W]e just robbed a bank." (*Id.* at 3.)  Chaney testified that Payne told him to search the bag for tracking devices, and that Andrillion drove to his house. (*Id.* at 4.)   The State also presented evidence from officers at the scene that upon placing Payne in a patrol car, he gave an unsolicited statement that he was a "professional bank robber." (*Id.* at 4.)  One sheriff's deputy recovered approximately $2,200 from Payne's pocket as well as the bank's tracking device. (*Id.* at 4.)  A deputy also testified that upon placing Payne in the patrol car, he stated "robbery is so easy" and "I know I'm going down for this . . . I'm looking at fifty years minimum. . . ." (*Id.* at 4.)

Payne, proceeding *pro per*, attempted to present a duress defense. (*Id.* at 6.)  He testified that Chaney and Andrillion threatened to kill him or his fiancée if he did not pay a debt he owed to Andrillion. (*Id.* at 6)  Payne recounted that he had worked for Andrillion selling merchandise to retail stores. (*Id.* at 6.)  Payne testified that although he was a good salesman, he began running up a debt with Andrillion by not paying him the full amount for the goods he was selling. (*Id.* at 6.)  Payne disputed the amount he owed to Andrillion. (*Id.* at 6.)  Chaney, who raised pit bulls, threatened harm to Payne if he did not repay Andrillion. (*Id.* at 6–7.)  In December 2003,

Chaney, who also apparently owned a weapon, told Payne that if he failed to repay Andrillion by New Year's Day, Payne or Payne's fiancée would be killed. (*Id.* at 7.) Payne paid Andrillion approximately $700 in December 2003, leaving an $800 balance due on the day of the robbery. (*Id.* at 7.)

According to Payne, on December 31, 2003, Andrillion called him with an "opportunity" to work off his debt. (*Id.* at 7.) When Andrillion came to pick him up, Payne was surprised to see Chaney in the car. According to Payne, he began to suspect Andrillion and Chaney were planning a bank robbery. (*Id.* at 7–8.) When they arrived at the credit union, Payne asked Andrillion if it was necessary to commit the robbery, and Andrillion replied, "either that or your life." (*Id.* at 8.) Thereafter, Payne took the money from the credit union because he was fearful of Andrillion. (*Id.* at 8.)

Payne's fiancée, Sandra Brown, testified that on the date of the robbery, Payne left their house with a small duffel bag and said he would be gone for a while. (*Id.* at 9.) Payne also told Brown that he was meeting Andrillion in order pay off his outstanding debt. (Docket No. 39: Lodged Doc. No. 22: Reporter's Transcript on Appeal ("RT") at 539.)

The jury convicted Payne on both robbery counts. (CT 899–901.) On January 3, 2005, the Superior Court sentenced Payne to 25 years to life on each count of robbery and imposed two consecutive 5-year terms for his prior serious felony convictions, thus yielding a total term of imprisonment of 60 years to life plus ten years. CT 1200.

Payne, at this point represented by counsel, appealed to the California Court of Appeal. (Docket No. 39: Lodged Doc. No. 2.) That appeal raised two arguments: (1) that the Superior Court erred in not severing Payne's and Andrillion's trials, and (2) that the sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). The Court of Appeal, in an unpublished opinion, rejected both arguments. (Docket No. 39: Lodged Doc. No. 3.) Payne's petition to the California Supreme Court was denied, as was his certiorari petition to the United States Supreme Court. (Docket No. 39P Lodged Doc. Nos. 6, 9.)

On December 11, 2006, Payne petitioned the Superior Court for a writ of habeas corpus under state law. (Lodged Doc. No. 8.) On January 10, 2007, the Superior Court denied state

collateral relief.[2]  (Lodged Doc. No. 9.)  On January 25, 2007, Payne filed his petition with the Court of Appeal for the Third Appellate District, which denied the petition without an opinion. (Lodged Doc. No. 11.)  On April 18, 2007, the California Supreme Court denied Payne's petition for state collateral review.  (Lodged Doc. No. 13.)

## II.   Payne's Habeas Petition

### A.   Procedural History

Payne commenced this proceeding on August 21, 2007, by filing a *pro se* Petition for a Writ of Habeas Corpus.  (Docket No. 1).  Magistrate Judge Hollows appointed counsel for Payne on August 30, 2007.  (Docket No. 5.)  Less than one month later, Payne substituted attorneys. (Docket Nos. 6–8.)

On March 17, 2008, Payne's counsel filed an Amended Petition for a Writ of Habeas Corpus.  (Docket No. 24.)  Respondent J.C. Walker (the State) filed an Answer to the Petition on July 2, 2008 (Docket No. 39.)  Payne thereafter moved to proceed without counsel and filed various documents without regard to his represented status.  (Docket Nos. 41–46, 48–50.)  On April 8, 2009, Magistrate Judge Hollows granted Payne's request to proceed *pro se* and granted him leave to file a Traverse in response to the State's Answer.  (Docket No. 51.)

The case was reassigned to this Court on August 19, 2009.

### B.   Claims for Relief

Payne's Petition raises fourteen grounds for relief, although there is some overlap in the various claims: (1) violation of the Sixth Amendment by the Superior Court's failure to appoint counsel for Payne's competency hearing (Pet. 5, 8–10); (2) ineffective assistance of appellate counsel in failing to raise certain meritorious issues, including his lack of representation at the competency hearing (Pet. 5, 10–11); (3) due process violation with the introduction of Payne's prior convictions which were obtained by threats and were involuntary (Pet. 6, 11–14); (4) denial of equal protection when the Superior Court failed to allot Payne the required number of

---

[2] The relevant holdings of the Superior Court with respect to Payne's pettiion for state habeas relief are set forth *infra*.

peremptory challenges (Pet. 6, 14–16); (5) judicial bias by the Superior Court against Payne (Pet. 16–18.); (6) failure to give requested jury instructions (Pet. 18.); (7) prosecutorial misconduct during the cross-examination of Payne and during the State's closing argument (Pet. 18–19); (8) that the prior crimes evidence overly prejudiced Payne (Pet. 20); (9) imposition of an unconstitutionally harsh sentence (Pet. 20); (10) undue delay in adjudicating Payne's *Marsden* motion (Pet. 22.); (11) denial of right to an investigator and certain ancillary legal services (Pet. 23–26.); (12) denial of right to advisory counsel (Pet. 26.); (13) failure by the State to turn over exculpatory evidence (Pet. 28.); and (14) ineffective assistance of counsel (Pet. 30.)

The Amended Petition, filed by Payne's then-counsel is limited to the argument that Payne's Sixth Amendment rights were violated when the Superior Court failed to appoint Payne counsel for his competency hearing.  (Docket No. 24, at 4.)

The State's Answer addresses each of Payne's fourteen claims raised in his original Petition, and this Court deems that Petition as the operative pleading.  Payne's Traverse also addresses each of his fourteen putative grounds for relief.

## DISCUSSION

**I.    Legal Standard**

Petitioner's application for a writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and is subject to the procedures and standards provided therein.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d)-(e)(1).

A state court's decision is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court decision is an "'unreasonable application'" if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under these standards, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

To determine whether the state court's decision was contrary to or an unreasonable application of established federal law, this court looks to the last reasoned state court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). If a claim is denied in an order that is "unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

Because Payne is proceeding *pro se*, this court construes his petition liberally. *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("We must 'construe *pro se* habeas filings liberally.'").

## II.   Right to Counsel at Competency Hearing (Claim One)

Payne asserts that his Sixth Amendment right to counsel was violated when the Superior Court, having expressed doubts about Payne's competency in April 2004, did not appoint counsel prior to conducting a competency hearing and adjudging Payne competent to continue

9

representing himself. The Superior Court rejected this claim in Payne's state habeas petition, reasoning: "While Penal Code [§] 1368 states that if the defendant is unrepresented by counsel, the court shall appoint counsel, [Payne] has affirmatively waived counsel and was proceeding *pro per*." The State argues that no violation occurred because the Superior Court had properly granted Payne's motion to proceed *pro per* pursuant to *Faretta v. California*, 422 U.S. 806 (1975), and no evidence was subsequently introduced to show Payne's waiver had not been knowing or intelligent.

The Sixth Amendment guarantees a defendant the right to the assistance of effective counsel at every critical stage of a criminal prosecution. *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). A "critical stage is a[ny] 'trial-like confrontation, in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid that prejudice.'" *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) (quoting *Beaty v. Stewart*, 303 F.3d 975, 991–92 (9th Cir. 2002)). A competency hearing is a critical stage because it is one of "those steps of a criminal proceedings that hold[s] significant consequences for the accused." *Id.* However, a criminal defendant may waive his constitutional right to counsel at these critical hearings provided that such waiver is done "knowingly and intelligently." *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)).

Payne does not argue that his wavier of counsel in February 2004 was not knowing; rather, subsequent to that waiver, Payne argues the Superior Court had a renewed obligation to appoint counsel when it expressed doubts as to Payne's competency to represent himself. The Superior Court's error in allowing Payne to proceed *pro se* at his own competency hearing is evident: "Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel." *United States v. Purnett*, 910 F.3d 51, 55 (2d Cir. 1990). Once Payne's competency was in question, the proceedings entered into a critical stage regarding the fitness of Payne to represent himself. Until the doubts were resolved, Payne was not in a position to proceed *pro per*, and his right to counsel, despite the prior waiver, was violated. *See Leonti*, 326 F.3d at 1117; *Sturgis v. Goldsmith,* 796 F.2d 1103, 1109 (9th Cir.

1986).

In *United States v. Klat*, 156 F.3d 1258 (D.C. Cir. 1998), the D.C. Circuit faced this issue on a direct appeal of a criminal conviction. There, after the defendant waived her right to counsel, the district court made a finding that there was "reasonable cause" to believe that the defendant was mentally incompetent to stand trial. *Id.* at 1262. The court of appeals held that "where a defendant's competence to stand trial is reasonably in question, a court may not allow that defendant to waive her right to counsel and proceed *pro se* until the issue of competency has been resolved." *Id.* (internal citations omitted).

In *Pate v. Robinson*, 383 U.S. 375 (1966), the Supreme Court addressed an analogous issue of whether a Sixth Amendment violation occurred when the state court held that an accused had waived his right to a competency hearing by failing to raise the issue before the trial court. *Id.* at 376–77. The Supreme Court granted habeas relief, holding that a defendant could not waive his right to a competency hearing because, among other reasons, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." 383 U.S. at 384.

In view of *Klat* and *Pate*, Payne's due process rights were violated when the Superior Court declined to appoint counsel for the competency hearing. But to warrant relief under AEDPA, the State court's determination that his rights were not violated must have been contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). This Court cannot conclude the Superior Court's error meets this standard.

As the D.C. Circuit recognized in *Klat*, "The Supreme Court has not explicitly considered this issue." 156 F.3d at 1263. The Eleventh Circuit has observed the same: "The Supreme Court has not held that a court must appoint counsel for a competency hearing after a defendant had been found competent and waived his right to counsel." *Porter v. Att'y Gen.*, 552 F.3d 1260, 1268 (11th Cir. 2008) (per curiam), *rev'd in part on other grounds sub nom., Porter v. McCollum*, 130 S. Ct. 447 (2009). These references posit that the law in this realm is hardly "clearly established," much less dictated by the Supreme Court's precedent. *See Williams v.*

11

1  *Taylor*, 529 U.S. at 412.  Petitioner fails to highlight any contradictory Supreme Court precedent
2  requiring a trial court to appoint counsel for a defendant proceeding *pro per* simply because the
3  trial court expresses a reservation about mental competency and thus orders a psychological
4  evaluation as a backstop.
5        Payne also fails to identify any due process violations in the competency hearing itself.
6  Payne offered no evidence to rebut the expertss conclusions that he was competent to stand trial.
7  Absent contemporaneous evidence that Payne was not competent to proceed with his case, the
8  failure to appoint counsel is not a ground for habeas relief.  *Williams v. Woodford*, 384 F.3d 567,
9  610 (9th Cir. 2004) ("Given the significant contemporaneous evidence of [the petitioner's]
10 competence at trial, supported by defense counsel's firm belief that [petitioner] was competent,
11 and the absence of persuasive evidence to the contrary, [petitioner] fails to establish a violation
12 of his right not to be tried and convicted while incompetent.").  Accordingly, the state court's
13 resolution of this Sixth Amendment and due process claims arising from his competency hearing
14 was not contrary to clearly established law under AEDPA.

**III.   Ineffective Assistance of Appellate Counsel (Claim Two)**

16        Payne contends that his state-court appellate counsel was ineffective in failing to raise on
17 direct appeal numerous alleged constitutional violations, in particular the Superior Court's error
18 in failing to appoint counsel for the competency hearing.  Although Payne submits that his
19 appellate counsel failed to communicate with him, Payne attaches several letters he sent to his
20 counsel *as well as* counsel's responses which detailed why counsel did not believe many of the
21 issues Payne sough to raise were "meritorious."  The Superior Court rejected Payne's ineffective
22 assistance of appellate counsel claims in his state habeas proceeding because Payne's allegations
23 were conclusory and there was no justification of why counsel's judgments were "unreasonable."
24        Ineffective assistance of appellate counsel warrants habeas relief, and such claims are
25 reviewed under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See*
26 *Cockett v. Ray*, 333 F.3d 938, 944 (9th Cir. 2003).  A petitioner "must show that counsel's
27 performance fell below an objective standard of reasonableness and that there is a reasonable
28 probability that, but for counsel's unprofessional errors, [the petitioner] would have prevailed on

appeal." *Id.* (internal quotation marks omitted).

Payne fails to satisfy even the first prong of *Strickland* because his counsel's decision to exclude many of the issues Payne sought to brief was not objectively unreasonable. As recounted above, there is no line of established case law requiring appointment of counsel for Defendant's who have validly chosen to proceed *pro per*. The correspondence Payne submits with his Petition shows that his counsel was presented with this argument along with a litany of putative errors Payne had identified. Counsel learned that Payne refused to be represented by counsel while simultaneously learning that Payne was pursuing an ineffective assistance of counsel argument based on his own self-representation. Faced with these inconsistencies and clearly frivolous arguments, counsel could reasonably have concluded Payne's competency arguments were meritless and, as counsel did, justifiably pursued other issues he deemed meritorious. "In many instances, appellate counsel will fail to raise an issue because []he foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Payne's appellate counsel considered the issues Payne sought to raise, had a reasonable basis for excluding many of them from his arguments, communicated those reasons to Payne, and thereby acted reasonably under *Strickland*.

**IV.   Prior Convictions and Sentence (Claims Three and Nine)**

Payne asserts that the State's introduction of his prior convictions created a due process violation at sentencing. The State introduced evidence of Payne's convictions in 1981 and 1987 to enhance his sentence, and Payne argues this was a due process violation because those convictions were obtained by guilty pleas Payne entered involuntarily. "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid." *Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 403 (2001). Unless a prior conviction was obtained in violation of the Sixth Amendment right to counsel, the petitioner "generally may not challenge [an] enhanced sentence through a petition under § 2254 on the ground that the prior conviction was

unconstitutionally obtained." *Id.* at 403–04.  Because Payne does not claim his prior convictions were obtained without effective counsel, his effort to collaterally attack those convictions must fail.

Payne's sentence also did not contravene the Supreme Court's holding in *Cunningham v. California*, 549 U.S. 270 (2007).[3]  Although Payne argues that the jury had to find facts supporting the Superior Court's imposing a consecutive sentence, several circuits hold otherwise. *See, e.g.*, *United States v. Hicks*, 389 F.3d 514, 532 (5th Cir. 2004); *United States v. White*, 240 F.3d 127, 133–36 (2d Cir. 2001).  The state court's denial of relief on this ground, *see People v. Black*, 161 P.3d 1130, 1144 (Cal. 2007) ("*Cunningham*, however, does not undermine our previous conclusion that imposition of consecutive terms under section 669 does not implicate a defendant's Sixth Amendment rights."), thus does not contravene established Supreme Court precedent on Sixth Amendment fact-finding by juries.

## V. Peremptory Challenges (Claim Four)

Payne contends that his due process and equal protection rights were violated because he was not allotted the correct number of peremptory challenges under California law.  Payne had ten challenges and contends he should have had between fifteen and twenty-five.  The Superior Court denied Payne state habeas relief on this ground because Payne did not lodge a contemporaneous objection during jury selection.  The State argues Payne's failure to object renders this claim procedurally defaulted, and this Court agrees.

"Federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule."  *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999).  "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a

---

[3] Payne argues that his sentence violated California law, but habeas relief may not be predicated on such errors.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 561 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotation marks omitted)).

14

state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). The petitioner's failure to lodge a contemporaneous objection regarding the appropriate number of peremptory challenges is an adequate and independent procedural bar to relief, as clearly expressed by the Superior Court. *Vansickel*, 166 F.3d at 958–59. Accordingly, this claim is defaulted.

### VI. Judicial Bias (Claim Five)

Payne seeks relief on the ground that the Superior Court judge was biased, as shown by that court's denial of "all significant motions" made by Payne. The Superior Court rejected this contention in state habeas proceedings because Payne provided no examples of motions that were erroneously denied and, nevertheless, the record did not support Payne's contentions.

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Such rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* Payne argues that the court's admission of impeachment testimony against him and the court's unspecified "hostile" comments and refusal to grant a two or three day continuance reveal bias. They do not. As the state court noted, Payne has not provided any evidence to support his conclusions. The denial of a procedural motion, without an indica of animus, is not sufficient proof to support a claim of judicial bias. *Id.* Moreover, these instances of adverse evidentiary or procedural rulings, none of which was reversed on direct appeal, were too scattershot to meet the level of pervasive extrajudicial bias required for relief. *See id.* ("A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.").

### VII. Prosecutorial Misconduct (Claim Seven and Eight)

Payne argues there was prosecutorial misconduct at his trial when the State introduced evidence of his prior conviction and when the prosecutor impeached Payne's testimony using the prior convictions. Neither contention has merit.

In a claim for prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' [misconduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Towery v. Schriro*, 641 F.3d 300, 310 (9th Cir. 2010) (quotation marks

omitted). States may enact evidentiary rules allowing for the introduction of prior convictions, so long as the jury is given an appropriate limiting instruction, and prosecutors may introduce such evidence pursuant to these state rules. *See Spencer v. Texas*, 385 U.S. 554, 563–64 (1967); *United States v. Tighe*, 266 F.3d 1187, 1192 (9th Cir. 2001) (examining constitutionality of use of prior convictions). When this evidence was introduced at Payne's trial, the Superior Court not only gave a limiting instruction, *see* CALJIC 2.23 ("Believability of Witness—Conviction of a Felony"), it also ruled that the prosecutor could introduce the prior convictions to contravene Payne's theory of duress. The prosecutor did nothing but follow the trial court's rulings, which were themselves consistent with Supreme Court's holdings regarding due process limits on prior crimes evidence. Accordingly, Payne's claims of prosecutorial misconduct and due process violations arising from the use of his prior convictions lack merit.

**VIII.   Jury Instructions (Claim Six)**

Payne offered various jury instructions for the Superior Court to give on his duress theory of defense and on the elements of robbery. The trial court refused to give these instructions because the legal principles already were covered in other California Jury Instructions, Criminal ("CALJIC") charges that were read to the jury. "[I]it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995) (quotation marks omitted). Because Payne's proposed instructions on duress and the intent for robbery were adequately covered by CALJIC Nos. 4.40 ("Duress—Threats and Menaces"), and 9.40.2 ("Robbery—After Acquired Intent"), there was no due process violation in rejecting Payne's proposed instructions.

**IX.   Requests for Ancillary Legal Services (Claims Ten, Eleven, Twelve, and Fourteen)**

During pretrial proceedings, Payne made numerous requests of the trial court which were denied. As relevant here, at his first hearing, Payne moved to replace his court-appointed counsel as ineffective using a *Marsden* motion, which the trial court denied as premature. Payne later petitioned to replace his court-appointed investigator, which the trial court denied. Finally, after displacing his counsel and proceeding *pro per*, Payne unsuccessfully moved for appointment of

standby counsel.  The Superior Court denied state habeas relief on these grounds because any error in the trial court's provision of these ancillary services would not have affected the verdict.

"*Faretta* holds that the rights guaranteed by the [S]ixth [A]mendment are personal to the accused.  The rights to notice, confrontation, and compulsory process mean, at a minimum, that time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation." *Milton v. Morris,* 767 F.2d 1443, 1446 (9th Cir. 1985) (quotation marks omitted).  The denial of access to adequate legal services, when a defendant is proceeding *pro per*, amounts to a denial of a defendant's constitutional right to self-representation.  *United States v. Portillo*, 633 F.2d 1313, 1324–25 (9th Cir. 1980).  An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense.  *Milton*, 767 F.2d at 1446.  However, a defendant who chooses to represent himself does not have a due process right of access to every resource which a non-incarcerated individual might obtain, "so long as [the accused] is afforded some alternative means for assistance in the preparation of his defense." *See id.* (holding that denial of access to a court maintained library was not a due process violation).

Although Payne argues the trial court did not timely rule on his *Marsden* motion to proceed *pro per*, the record shows Payne moved to dismiss his court-appointed counsel on the very day that counsel was appointed.  Although a defendant who "lack[s] all means of preparing and presenting a defense" is denied his right to counsel, a mere delay in the provision of a service, is not a constitutional deprivation.  *See id.*  The trial court scheduled a hearing on Payne's motion and relieved counsel *within a month* of Payne's initial request, and only after the trial court had verified that Payne was knowingly and intelligently waiving his right to counsel.  Faced with a litigant intent on frustrating the court's proceedings, the Superior Court expeditiously and properly handled Payne's request to proceed without counsel.  *See Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008) ("As it stands, the right to self-representation is not without limits.  The right is not a license to abuse the dignity of the courtroom.") (quotation

marks omitted).[4]

It was also not a constitutional violation to deny Payne's motion to substitute his investigator. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. Like his request to proceed *pro per*, Payne's dissatisfaction with his investigator related to timing, in particular that it took eight days to deliver documents ordered and that Payne was suspicious his investigator was tampering with evidence. Payne has not provided any proof that his investigator failed to perform the tasks requested, nor has he provided more than a conclusory allegation of misconduct by the investigator. Under these circumstances, any difficulties Payne faced at trial based on the lack of investigative services were of his own making.

Finally, Payne cannot establish a violation of a clearly established right to standby counsel, as no such right is recognized. *Locks v. Sumner*, 703 F.2d 403, 407–08 (9th Cir. 1983) ("If the right to co-counsel is not of constitutional dimension, we fail to see why the right to advisory counsel should be afforded higher status.") (internal citation omitted).

Accordingly, Payne is not entitled to habeas relief based on the denial of various ancillary legal services.

### X.   *Brady* Violation (Claim Thirteen)

Payne contends that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not provide him with a surveillance video tape from the Dollar Tree store where Payne purchased sunglasses prior to robbing the credit union. The Superior Court denied state relief on this issue because Payne could not show the videotape was material to his defense. The State argues there was no *Brady* violation because the surveillance tape Payne sought was destroyed by the store, which prevented the State from obtaining it.

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to

---

[4] Payne also asserts he was ineffective in representing himself, and that he was therefore denied his constitutional right to counsel. However, by voluntarily choosing to proceed *pro per*, such a claim is barred. *Williams v. Stewart*, 441 F.3d 1030, 1047 n.6 (9th Cir. 2006).

preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  The record shows that the Sacramento sheriff's department was aware that there were surveillance cameras at the Dollar Tree store in West Sacramento where Payne purchased the sunglasses before the robbery.  The prosecutor explained to the trial court that when the sheriff's office attempted to retrieve the video surveillance tape in response to a court discovery order, investigators learned the tape had been destroyed pursuant to store policy (after all, that store had not been robbed).  Payne's investigator also tried unsuccessfully to obtain the surveillance recordings. The investigator explained to Payne that the assistant manager of the store initially had stated that the tape was turned over to the West Sacramento Police Department, however, the assistant manager later realized that a different tape was given to the police.  Payne presents no evidence that the State was responsible for the wrong tape being turned over to the police or that the State suppressed any tape it received.  Absent this evidence or any suggestion of bad faith, Payne is not entitled to relief under *Brady*.

## CONCLUSION

For the foregoing reasons, Payne's Petition for a Writ of Habeas Corpus is DENIED. Because Payne has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not be issued.  28 U.S.C. § 2253(c).

The Clerk of Court is directed to serve Petitioner with a copy of this Memorandum & Order at his present address: Gerald J. Payne, California State Prison, Sacramento, P.O. Box 29006, Represa, CA 95671.  The Clerk is directed to terminate all motions pending and mark this case as closed.

DATED: September 15, 2011

/s/ Milan D. Smith, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

*Counsel of Record*

Gerald J. Payne
V-63408
California State Prison, Sacramento
P.O. Box 290066
Represa, CA 95671-0066
*Petitioner pro se*

Daniel B. Bernstein
Office of the Attorney General for the State of California
Department of Justice
P.O. Box 944255
Sacramento, CA 94244
*Counsel for Respondents*